John Donoghue et al., Plffs. in Err., *v.* Michael Hanley et al., to Use, Etc.

---

Same *v.* Same.

---

Lehigh Valley Railroad Company, as Garnishee, Etc., *v.* Same.

A judgment in an attachment suit against a nonresident of the state in which defendant's goods were attached, but he was not personally served, is good as a personal judgment against him, where the record shows a general appearance by attorneys for him in the suit without any restriction or limitation and that, by consent of counsel on both sides, a jury of inquest was awarded to assess the damages; and such judgment is sufficient upon which to enter judgment against a garnishee.

(Argued March 7, 1887. Decided March 21, 1887.)

January Term, 1886, Nos. 104, 107, E. D., before MERCUR,

Cited in Lansford v. Jones, 18 Pa. Co. Ct. 262, 5 Pa. Dist. R. 483; Jennings v. Lehigh Valley R. Co. 3 Lack. Legal News, 104.

NOTE.—For the report of a case brought in Maryland to enforce the judgment referred to herein, reviewed by the Supreme Court of the United States on error, see Hanley v. Donoghue, 116 U. S. 1, 29 L. ed. 535, 6 Sup. Ct. Rep. 242.

The defendant in a foreign attachment may enter an appearance for a special purpose. Turner v. Larkin, 12 Pa. Super. Ct. 284, 7 Del. Co. Rep.

Ch. J., PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Carbon County to review a judgment in favor of plaintiffs in an attachment proceeding. Affirmed.

January 11, 1876, Michael Hanley and William F. Welch, partners, doing business as Hanley & Welch, commenced an action, in the common pleas of Washington county, against John Donoghue and Charles Donoghue, partners, trading as John Donoghue & Brother, to recover damages for the breach of a covenant under seal.

John Donoghue being a nonresident, a writ of summons in covenant was issued against Charles and a writ of foreign attachment against John, "a nonresident of this state." The sheriff in whose hands the writs were placed returned the one against Charles as personally served; and as to the one against John, the sheriff returned that he had attached the goods and chattels of John in the hands of certain officers of the Waynesburg & Washington Railroad Company, whom he summoned as garnishees, and as to John Donoghue *nihil habet.*

January 22, 1876, the *narr.* was filed, in which plaintiffs stated their damages at the sum of $2,000.

The record shows a general appearance by Messrs. Hart & Brady, as attorneys for the defendants, without any restriction or limitation. The appearance docket, also, shows the following:

"August 25, 1876, on motion, judgment, in open court against the deft. (in covenant) for want of an affidavit of defense, and sum due liquidated at $————.

"J. P. Miller, Prothonotary.
"Sci. fa. v. Garnishees, to No. 198, March term, 1877."

The writ of inquiry of damages recites that the defendants were summoned to answer the plaintiffs "of a plea in an action of covenant," and that it was "in such manner proceeded in said

543. But if a general appearance be entered, there is a waiver of irregularities in the process (Memphis, C. & L. R. Co. v. Wilcox, 48 Pa. 161; Crowe v. Davis, 33 W. N. C. 103; Malone v. Lindsley, 1 Phila. 288; Atlas S. S. Co. v. United States Foreign & Domestic Fruit Co. 2 Pa. Co. Ct. 123); or of objection to the sufficiency of the affidavit of cause of action (Lansford v. Jones, 18 Pa. Co. Ct. 261, 5 Pa. Dist. R. 483).

court that the plaintiffs their damages, by occasion of the premises, ought to recover," etc.

The sheriff made return to this writ May 18, 1877, and then follows these entries: "June 4, judgment entered against the defendants for amount found to be due by jury in proceedings upon writ of inquiry of damages, to wit: $2,000."

"And March 20, 1877, on motion of plaintiffs' counsel, judgment, in open court on the foreign attachment, against John Donoghue, the nonresident defendant, and a jury of inquest awarded to assess the damages,—by consent of counsel on both sides. Order of court filed. Writ of inquiry issued, returnable to May term, 1877."

The officers of the Waynesburg & Washington Railroad Company, who were summoned as garnishees, answered denying that they had under their control or that the company had under its control, at the time of the service of the writ, any goods, moneys, etc., of the defendants in the action.

A transcript of the record of the judgment from the common pleas of Washington county was, December 20, 1883, filed in Carbon county; and December 26, thereafter, an attachment in execution was issued against the Lehigh Valley Railroad Company as garnishee and was duly served on the officers of said company.

January 14, 1884, John Donoghue presented a petition to dissolve the attachment, setting forth the proceedings in the common pleas of Washington county and alleging that said summons in covenant was served on Charles Donoghue alone and that the petitioner never authorized nor employed an attorney to appear for him in said proceedings; that the money in the hands of the Lehigh Valley Railroad Company, garnishee, is due for labor performed in the construction of a tunnel on such railroad and that Charles Donoghue is not and never has been a partner in such construction and has no interest therein.

A rule to show cause was granted and, after hearing, the court, February 23, 1884, filed an opinion in which it held that the judgment against John Donoghue, taken August 25, 1876, was irregular and erroneous, but it never having been reversed by a superior court or set aside by the court of common pleas of Washington county in which it was entered, this court of common pleas of Carbon county would not interfere, and continued

the rule to show cause, to afford the defendant an opportunity to make application to the court in Washington county; whereupon, John Donoghue filed a petition in the court of common pleas of Washington county to strike off the judgments of August 25, 1876, March 20, 1877, and June 4, 1877.

March 24, 1884, the court of common pleas of Washington county granted a rule to show cause, which (after hearing, on answer and demurrer) was discharged by the court STOWE, P. J., specially presiding, in the following order:

"I have no doubt that the judgment entered against Charles and John Donoghue, August 25, 1876, for want of an affidavit of defense, was absolutely void as to John. But this does not in any wise affect or invalidate the judgment against the latter, March 20, 1877, entered (as we understand the record to say or mean) 'by consent of his counsel.' If I am right in interpreting the record, and I have no doubt I am, the judgment is perfectly regular and cannot be set aside.

"The rule to set aside this judgment is therefore discharged."

John Donoghue then filed a petition in the common pleas of Washington county for a rule to show cause why the judgment of August 25, 1876, which was held absolutely void as to John Donoghue, by STOWE, P. J., should not be stricken from the record. The court, after hearing, filed the following opinion:

While I am still of the opinion that the judgment entered against petitioner, August 25, 1876, was absolutely void, I can see no necessity for ordering it to be stricken off. If the view I take of this case is correct, the judgment is a nullity, and ordering it to be stricken from the record will not in the least benefit the petitioner; for the supreme court would consider that as done which should have been done. But if, on the other hand, the judgment should by any possibility have any vitality which might benefit the plaintiff, I do not see why he should be deprived of it. There is nothing in the case to evoke the equitable interference of the court, and plaintiffs should have every possible legal advantage the record may give them. Petition refused.

Interrogatories were filed by plaintiffs' attorneys and January 17, 1885, the court granted a rule on the garnishee to answer the same. It appeared from the answers of the gar-

nishee that there was a balance due the defendant, John Donoghue, of $4,335.37. By a supplemental answer, alleging an error in the accounting by the garnishee, there appeared to be a balance due defendant of $3,600.73. The garnishee, further answering, amended the answer, stating the amount due defendant, so that it should read as follows:

"The above balance of $3,600.73 is now due absolutely as between defendant and garnishee, not being subject to any contingency as to satisfactory completion of work; but garnishee has received notice from defendants' counsel of possible outstanding assignments made prior to service of attachment, and desires to be further informed on this subject before answering fully."

After hearing on rule on the defendants and the garnishee to show cause why judgment should not be entered against the garnishee upon the answers filed to the interrogatories, the court, DREHER, P. J., filed the following opinion:

The judgment in this court was entered on a transcript of a judgment in the court of common pleas of Washington county. The defendants interpose objections to the present rule for judgment against the garnishee that the judgment against John Donoghue (the only party to whom the garnishee is indebted) is void.

In an opinion, heretofore given, we fully considered the question raised now, and held that while we considered the judgment irregular and erroneous, we had no power over it, and that the defendant must make his application to set aside or open the judgment, to the court of common pleas of Washington county. That court, on application of John Donoghue, refused to open the judgment, and that, notwithstanding His Honor, Judge STOWE, considered the judgment void.

I am still of opinion that the judgment is not void, but only erroneous; and as the court of Washington county has refused to disturb it, it must stand as a good judgment until reversed by the supreme court.

While Judge STOWE held the judgment taken for want of an affidavit of defense void, he held the judgment which we treated as a judgment *in rem* to be *in personam.*

Let judgment be entered against the garnishee on its answers to the plaintiffs' interrogatories for the amount of the plaintiffs' judgment, debt, interest, and costs, in the usual form.

October 20, 1885, judgment was accordingly entered against the garnishee for the amount of plaintiffs' judgment and interest from May, 1877, to which judgment John Donoghue excepted.

The assignments of error specified the action of the court: (1) In entering judgment on the exemplified record from the common pleas of Washington county, so far as John Donoghue is concerned; (2) in not dissolving the attachment, as prayed for in the petition of John Donoghue; and (3) in entering judgment against the Lehigh Valley Railroad Company, on the answers filed.

*Edward Harvey, Henry S. Drinker, Frederick Bertolette, Edward M. Mulhearn,* and *Craig & Loose,* for plaintiffs in error.—The act of April 16, 1840 (P. L. 410) provides for the transfer of judgments from one court and county to another, by filing of record in said other court a certified copy of the whole record in the case. The record must contain all the essentials of a perfect transcript. Bell v. Murphy, 6 Watts & S. 50.

And the transcript must show that it is a final judgment. If it be of a case developed to verdict, but not yet in judgment, no transfer can be made. Bailey v. Eder, 90 Pa. 446.

Nor can an award of arbitrators be transferred before the time for an appeal has passed. Hallman's Appeal, 18 Pa. 310.

Such transfer does not make it a judgment of the court to which the transfer is made. Mellon v. Guthrie, 51 Pa. 116.

It is only a quasi judgment for limited purposes. Brandt's Appeal, 16 Pa. 346.

The court where the exemplified record is filed has exclusive control of all execution process thereon. Baker v. King, 2 Grant Cas. 254; King v. Nimick, 34 Pa. 297.

If, however, the original judgment is stricken off, the transferred judgment falls with it. Banning v. Taylor, 24 Pa. 297; Knauss's Appeal, 49 Pa. 421; Brandt's Appeal, 16 Pa. 346.

The court will examine the exemplification to see if a valid judgment was originally obtained. We do not mean to say that its regularity will be inquired into; that can only be done in the court where it was originally entered, or in some superior court whose jurisdiction requires them to examine the record on appeal, certiorari, or writ of error. McDonald v. Simcox, 98 Pa. 619; Tarbox v. Hays, 6 Watts, 398, 31 Am. Dec. 478.

Courts of co-ordinate jurisdiction cannot modify or set aside the judgments of each other. Doyle v. Com. 107 Pa. 20.

If the judgment is void, then the exemplified record filed in another court is equally void. Edward's Appeal, 66 Pa. 90; Quinn's Appeal, 86 Pa. 447.

In Williamson's Case, 26 Pa. 9, 67 Am. Dec. 374, it was held that the court will only look at the record to see whether a judgment exists, and has no power to say whether it is right or wrong. It is conclusively presumed to be right until it is regularly brought up for revision. But the record must show a judgment, and it must appear that the court rendering it had jurisdiction of the parties and the subject-matter. A judgment entered in an action where there was no service on the parties, or on property, would be a nullity everywhere. The same would follow if it is entered in a controversy not within the jurisdiction of the court. It is essential that the subject be within the jurisdiction, to be definitive and binding.

Billings v. Russell, 23 Pa. 192, 62 Am. Dec. 330.

"The defect," says SERGEANT, J., "which the law [act of June 13, 1836, § 70 (P. L. 585)] seems to have intended to remedy was, that in a suit against two joint debtors, of whom one was absent, if a summons or capias were served on the other, and judgment rendered against him, the separate property of the debtor not served could not, by our ordinary mode of proceeding, be levied by execution; nor could it originally have been levied on by attachment, because, one defendant being resident, attachment would not lie in the joint suit." Re White, 10 Watts, 221.

The effect of the service of the summons on Charles was to bring him into court, where, if a recovery was had, a general judgment could be obtained against him; as to him the action proceeded as an ordinary action of covenant. The effect of the attachment against John was to bring his individual property attached within the bailiwick within the grasp of the law to answer any judgment that might be recovered against him and his codefendant in the action; as to him the action proceeded as a pure proceeding in rem.

It is clear that the entry of "judgment against defendant (in covenant) for want of an affidavit of defense" was to be made against Charles, for he was the only defendant served, and for the additional reason that no judgment can be taken in foreign attachment for want of an affidavit of defense, even where an appearance has been entered. Grant v. Hickcox, 64 Pa. 334.

The judgment of March 20, 1877, is either absolutely void as

to John or is only a judgment *in rem.* In either aspect of the case, the attachment in execution is void and should have been dissolved, and the judgment should have been stricken from the record. If the judgment was void, or is only a judgment *in rem,* that matter is inquirable in the courts of Carbon county, as it would have been in the county of Washington, for if it is void in the court where it was entered, it is void everywhere. And if it was a judgment *in rem,* its only force and effect is upon the property attached and upon which it is a lien. Beyond that it has no grasp. It remains, therefore, to consider this record under the proposed analysis.

The præcipe and writ was in foreign attachment; there was no personal service; the writ was returned *nihil habet;* and the record shows that the judgment was taken in open court against John in the foreign attachment at the third term after the issuing of the writ. Section 53 of the act of June 13, 1836, P. L. 584, provides:

"It shall be lawful for the plaintiff, at the third term of the court after the execution of the writ aforesaid, if he shall have filed his declaration, to take judgment thereon against the defendant, for default of appearance, unless the attachment before that time be dissolved."

The judgment against John, taken March 20, 1877, was interlocutory. As there was no affidavit of claim and the damages demanded were not liquidated, a jury of inquiry was necessary. Accordingly a writ of inquiry was directed to the sheriff as required by the rules of practice. Thornton v. Bonham, 2 Pa. St. 102; O'Neal v. O'Neal, 4 Watts & S. 130.

And in the case just cited above, this court says that in default of assessment of damages the writ abates. The assessment may also be made by the prothonotary under § 1 of the act of April 9, 1870 (P. L. 60). We have here all the essentials of a proceeding in foreign attachment. The maxim *Omnia præsumuntur rite esse acta* is certainly applicable to this record.

The rule may be stated to be, that, where it appears upon the face of the proceedings that the inferior court has jurisdiction, it will be intended that the proceedings are regular; but that, unless it so appears—that is, if it appear affirmatively that the inferior court has no jurisdiction, or if it be left in doubt whether it has jurisdiction or not—no such intendment will be made. Broom, Legal Maxims, *952.

The presumption is that everything that was done was done rightly and according to law. Brown v. Ridgway, 10 Pa. 42; Gidding's Appeal, 81* Pa. 72.

In Fox v. Com. 81* Pa. 516, it appeared of record that the recognizance was forfeited. This was considered as proof that all the steps necessary to complete the forfeiture had been taken upon the principle of *rite esse acta.*

If the opinion of the court below is examined it will appear that the learned judge regarded the judgment of March 20, 1877, as a judgment *in rem.* He uses this language: "It is not stated on what ground the judgment was taken. The only judgment, where there is no appearance in foreign attachment provided for by the statute, is for default of appearance. The judgment was entered on motion of plaintiffs' counsel, as is the usual practice where there is no appearance for defendants. . . . The plaintiffs, however, on their motion, took judgment against him in the foreign attachment, thus seeming to ignore the general appearance of Hart & Brady."

It is contended, however, that because the names of Hart & Brady appear as attorneys on the margin of the record opposite the names of the defendants, the judgment became a general one. The suit was against John and Charles Donoghue as partners, trading as John Donoghue & Brother. The writ was in covenant against one, and in foreign attachment against the other. One was served and the other was not. Charles was liable to a personal judgment, but John was not. All that was bound by the writ against him was his individual property actually attached; that is, his separate property, not firm property. *Re* White, 10 Watts, 217.

The appearance of the attorneys was for Charles.

He was the party named, and it is to be presumed that he only was represented by counsel. Brown v. Kelso, 2 Penr. & W. 427; Barlow v. Beall, 20 Pa. 180.

From the record it is evident that this appearance was intended for the defendant served, and this is also clear from the fact that it was so regarded by all parties in the court below and by the court itself. No judgment could have been taken in the foreign attachment, but by default of an appearance. The judgment entered March 20, 1876, was obviously taken for default of an appearance. And it would be preposterous to say that the court entered judgment because there was no appearance, and

when that judgment is attacked, to say that it must be sustained because there was an appearance.

It was also contended that the judgment of March 20, 1877, was by consent.    If it is meant that it was by confession the judgment fails to show it.    The word consent is used in the record entry; but it is evidently used in connection with the awarding of an inquest.    The judgment was taken by default of an appearance, and the inquest was awarded by consent of counsel on both sides—that is, by consent of the counsel for the plaintiffs and Charles Donoghue.    Why do we say for Charles?    Because the jury awarded damages against both and no formal judgment was entered against Charles until the award of the inquest was filed.    The use of the word "consent" is of no significance.    A somewhat similar entry was made by the clerk in Hall v. Williams, 6 Pick. 232, 17 Am. Dec. 356, viz. "W. & F. came by their said attorney."    As F. was a nonresident and no process had been served on him it was held that the entry made by the clerk could not be taken to be an assertion of record that F. appeared to the action.

It may also be remarked that nothing on the record shows when the appearance was entered.    Presumably it was not there when judgment was taken by default against John, for if it had been no such judgment would have been entered.

The judgment of May 25, 1876, is void and of no effect as to John.    It does not pretend to be a judgment against him; it is not docketed as a judgment against him.    It is expressly limited and confined to the action in covenant.    Then again the record shows that he was a nonresident and was not served with process. He was regarded as not served and a nonresident down to the entry of final judgment after the third term, to wit: March 20, 1877.    There was no jurisdiction over the person of John in August, 1876.    The court could not enter a judgment against him. Such a judgment would be void; "if it act without authority, its judgments and actions are regarded as nullities.    They are not voidable, but simply void."    Elliott v. Peirsol, 1 Pet. 340, 7 L. ed. 170; Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565.

We refer to the record as made up in Washington county, to show that this judgment was treated as void, so far as John is concerned.    And we refer to the case of Hanley v. Donoghue, in the Supreme Court of the United States, error to the supreme court of Maryland, 116 U. S. 1, 29 L. ed. 535, 6 Sup. Ct. Rep.

242, where the plaintiffs declare on this very judgment as good as to Charles and void as to John.

Under the rule as laid down in Donnelly v. Graham, 77 Pa. 274, the whole judgment is void.

Lastly, we call attention to the answers of the garnishee. Upon the supplemental answer no judgment could have been entered. There is a reservation in the answer "to be further informed." Before the answer could be regarded as final and conclusive a rule should have been taken for a more specific answer. The case was not ripe for judgment, and the court erred in entering it.

*R. E. Wright's Sons,* for defendants in error.—This court cannot interfere with the judgment in Washington county on the ground of irregularity or error. King v. Nimick, 34 Pa. 298; Wilkinson v. Conrad, 10 W. N. C. 23; McDonald v. Simcox, 98 Pa. 623.

The judgment of August 26, 1876, is not void; at most it is but erroneous and irregular and cannot be attacked collaterally but only on appeal to a higher court, or by the court that entered it. Hauer's Appeal, 5 Watts & S. 473; Wall v. Fife, 37 Pa. 398; Tarbox v. Hays, 6 Watts, 398, 31 Am. Dec. 478; Drexel's Appeal, 6 Pa. 272; Lewis v. Smith, 2 Serg. & R. 142; Stewart v. Stocker, 1 Watts, 139, 13 Serg. & R. 199, 15 Am. Dec. 589; Lowber's Appeal, 8 Watts & S. 390, 42 Am. Dec. 302; Ulrich v. Voneida, 1 Penr. & W. 251; Share v. Becker, 8 Serg. & R. 241; McDonald v. Simcox, 98 Pa. 623; Boyd v. Miller, 52 Pa. 431; Miltimore v. Miltimore, 40 Pa. 151–155; Purdon's Digest, p. 721, pl. 28; Hatch v. Stitt, 66 Pa. 264; Reber v. Wright, 68 Pa. 471.

The judgment of March 20, 1877, was not a judgment *in rem,* but a general judgment by consent.

The record reads as follows: "And now March 20, 1877, on motion of plaintiffs' counsel, judgment in open court on the foreign attachment against john Donoghue (the nonresident defendant) and a jury of inquest awarded to assess the damages —by consent of counsel on both sides."

It will be noticed that as to Charles a valid judgment had already been entered for want of an affidavit of defense, but the amount of damages had not been ascertained.

The judgment heretofore standing against John Donoghue

may have been erroneous under the doctrine of Grant v. Hick-cox, 64 Pa. 334.

Although the suit as against John was still a proceeding by attachment, and had some of the incidents of an attachment (to wit, a lien on property attached), yet the defendant having appeared by counsel, the effect of the judgment was different. There could no longer be a judgment *in rem* merely; but it became a general judgment—entered by confession after appearance.

The judgment thus entered was a general judgment. See Blyler v. Kline, 64 Pa. 130; Hatch v. Stitt, 66 Pa. 264.

There is nothing in the supplemental answer of the garnishee to prevent judgment. It is based upon a letter or notice that has no reference to this attachment, but solely to one issued long subsequent thereto by another party.

PER CURIAM:

These three cases were argued together. The facts are somewhat blended. We discover no error in the judgment of the court in any of the cases. The effect of the general appearance in the original judgment, and the subsequent proceedings in liquidating the amount gave to it the effect of a personal judgment. Such being the case there is no error in the action of the court in the county of Carbon, and the judgment against the garnishee is correct.

Judgment in each case affirmed.